IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


DONALD L. ROACH, DENEEN ROACH,    :
MATTHEW ROACH, HANNAH ROACH,    :
        Plaintiffs    :
            :
   v.    :   3:CV-08-1136
            :   (JUDGE VANASKIE)
CHIEF OF POLICE KENNETH MARROW,    :
JOHN ADAMS, JR., CATHY A. COOK,    :
CHARLES COTTER, Ulster Township    :
Supervisor, DONALD TUTTLE, Ulster    :
Township Supervisor, GEORGE    :
NICHOLS, Police Officer, BRYAN    :
ROGERS,    :
        Defendants    :

<u>MEMORANDUM</u>

      Plaintiffs Donald L. Roach, his wife Deneen Roach, and their children, Matthew and

Hannah Roach, brought this action against certain Ulster Township officials,[1] John Adams, Jr.,

Cathy A. Cook, and Bryan Rogers.  Donald Roach alleges violation of his constitutional rights

stemming from a July 10, 2007 incident in which he was charged with disorderly conduct for

allegedly "mooning" his neighbors.  Donald Roach, his wife, and his children also maintain

claims against Cathy Cook for defamation.

      Each of the Defendants has filed motions to dismiss.  Because Plaintiffs acknowledge

---

[1] The Ulster Township officials include former Chief of Police of Ulster Township
Kenneth Marrow, former Ulster Township Police Officer George Nichols, and Ulster Township
Supervisors Donald Tuttle and Charles Cotter ("Ulster Township Defendants").

that they are not pursuing claims for the denial of the due process clauses of either the Fifth or Fourteenth Amendments, the motions to dismiss those claims in Count I will be granted. Furthermore, because Plaintiff have failed to plead a claim cognizable under the anti-conspiracy provisions of 42 U.S.C. § 1985(3),[2] the civil rights conspiracy claim asserted pursuant to that section will be dismissed. In all other respects, the motions to dismiss will be denied.

I.    BACKGROUND

On June 13, 2008, Plaintiffs Donald Roach, Deneen Roach, Matthew Roach, and Hannah Roach filed a six count complaint against Defendants, asserting three common law malicious prosecution claims, a defamation claim, a 42 U.S.C. § 1983 claim, and a civil conspiracy claim under 42 U.S.C. § 1985(3). (Comp., Dkt. 1.) On September 30, 2008, Plaintiffs filed an Amended Complaint, presenting the same six causes of action. (Amend. Comp., Dkt. 30.)

In 2007, Donald Roach had previously sued Ulster Township Chief of Police Kenneth Marrow in the United States District Court for the Middle District of Pennsylvania for civil rights violations. (Id. at ¶ 19.) The case settled on or about May 22, 2007. (Id.) Plaintiffs allege that

---

[2] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

less than two months later, on July 10, 2007, Officer George Nichols "filed false charges of disorderly conduct against Plaintiff Donald Roach," for allegedly "'mooning' his neighbors by pulling his pants down and exposing his bare buttocks." (Id. at ¶ 20.) The neighbors who saw this alleged "mooning" were John Adams Jr., John Adams Jr.'s minor son Jay Adams, and Bryan Rogers. (Id.) Plaintiffs contend that, without probable cause, George Nichols "swore out a non-traffic citation and summons and executed an arrest" upon Donald Roach and "subjected him to an unlawful arrest, intermittent interrogation respecting various crimes, and at various times forced the Plaintiff Donald L. Roach to appear in court to answer for alleged crimes which he did not commit." (Id. at ¶ 22.) Donald Roach was charged with disorderly conduct in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(2).[3] (Id. at ¶ 23.) Plaintiffs aver that Nichols refused to conduct a factual investigation to support the charges and at the time of the arrest made specific reference to the prior lawsuit Donald Roach had filed, stating, "Well, you didn't sue me." (Id. at ¶¶ 24-25.)

Plaintiffs allege that the arrest was in retaliation for the previous lawsuit against Nichols' superior officer, Kenneth Marrow. (Id. at ¶ 26.) The charges were dropped on September 24, 2007, at a hearing before District Judge Timothy M. Clark in Bradford County. Plaintiffs aver:

> Following the dismissal of the charge of disorderly conduct against the Defendant Donald Roach, on or about October 10, 2007, the Defendant Kenneth Marrow re-

---

[3] Section 5503(a)(2) provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . makes unreasonable noise . . . ."

filed the summary offense charge of disorderly conduct, and according to his affidavit of probable cause, 'After reviewing the written statements of the victims, including the juvenile, I felt that it was appropriate to add the additional charge of Open Lewdness.' Kenneth Marrow added an additional misdemeanor offense charge of open lewdness pursuant to Title 18 of the Pennsylvania Crimes Code, sub-section 5901, and again re-filed the criminal charge of Disorderly Conduct, which was eventually listed or charged in the criminal information as two additional summary offense level counts of Disorderly Conduct, pursuant to Title 18 of the Pennsylvania Crimes Code, sub-section 5503(a)(3) and (a)(4).[4]

(Id. at ¶ 28) (footnote added). Plaintiffs aver that Marrow re-filed and added charges intentionally, willfully, maliciously, and without probable cause. (Id. at ¶ 29.) Plaintiffs also contend that Marrow lied to the Bradford County District Attorney's Office, lied in his criminal complaint, and that "at all times swore out a false and fraudulent warrant for the prosecution, charge, and arrest of the Plaintiff Donald Roach." (Id. at ¶¶ 29-30.) Plaintiffs aver that Marrow took the above-stated action in retaliation for the earlier lawsuit. (Id. at ¶ 32.)

Prior to Donald Roach's criminal trial, Defendant Kenneth Marrow was fired from his position as Chief of Police and George Nichols was fired from his position as police officer. (Id.

---

[4] Section 5901 provides that "[a] person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed." 18 Pa. Cons. Stat. Ann. § 5901. Sub-parts (a)(3) and (a)(4) of the disorderly conduct statute provide:

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. Cons. Stat. Ann. § 5503(a)(3)-(4).

at ¶¶ 34-35.)  Before trial, the Bradford County District Attorney's Office dismissed or withdrew the disorderly conduct charge that had been brought under 18 Pa. Cons. Stat. Ann. § 5503(a)(3) (using obscene language or making an obscene gesture), and the open lewdness charge brought pursuant to 18 Pa. Cons. Stat. Ann. § 5901.  (Id. at ¶ 36.)  At the conclusion of the Commonwealth's case, the trial court dismissed the remaining charges.  (Id. at ¶ 38.)

John Adams Jr., his son Jay Adams, and Bryan Rogers each testified as witnesses against Donald Roach during the criminal trial. Plaintiffs aver that each or these persons committed perjury.  (Id. at ¶¶ 39-42.)  Plaintiffs aver that none of the acts Donald Roach was accused of took place, and he "never exposed his bare buttocks or 'mooned' his neighbors." (Id. at ¶ 43.)

Plaintiffs contend that Donald Roach was "subjected to public humiliation and distress by being haled into court on false, frivolous, and fraudulent criminal charges and by having his name published in the local newspaper on several occasions as being accused of said criminal charges."  (Id. at ¶ 45.)  Moreover, they allege that Donald Roach's "reputation in the community was damaged by the false accusations of being a criminal", that he "suffered severe and extreme anxiety because of having to face the false, fraudulent, and unlawful criminal charges lodged against him," and that he "suffered an ongoing chilling of his First Amendment Rights to political speech, free association, and access to the courts."  (Id.)  Plaintiffs further allege that both Kenneth Marrow and George Nichols acted willfully in concert with others to

5

deprive Donald Roach of his constitutional rights.  (Id. at ¶ 48.)

Plaintiffs allege upon information and belief that Charles Cotter and Donald Tuttle, Supervisors of the Township of Ulster, actively encouraged, instructed, and/or directed Kenneth Marrow and/or George Nichols to file false and fraudulent charges in order to retaliate against Donald Roach for his prior civil lawsuit.  (Id. at ¶¶ 51, 53.)  Plaintiffs contend that Cotter and Tuttle were "angry that instead of being able to hide the illegal acts and the liability of the Township of Ulster, the news of both the lawsuit, the settlement, and the payment were published in at least two detailed articles in the local newspaper." (Id. at ¶¶ 51, 53.)  Plaintiffs aver that Cotter and Tuttle intended to deprive Donald Roach of his constitutional rights.  (Id. at ¶¶ 50, 52.)

Plaintiffs aver that Cathy Cook, who is John Adam Jr.'s sister, is a "well-known local gossip and troublemaker," and that while "[a]cting in her self-appointed role as vindictive troublemaker in the community," she "used her influence and political power with her brother and all of the Defendants to encourage them to retaliate against" Donald Roach because he had filed the prior civil action.  (Id. at ¶¶ 54-55.)   Plaintiffs also allege that Cathy Cook published a series of false and defamatory emails to several local influential members of the community, including the Recreation Board.   Plaintiffs aver that news of the prior civil settlement was published in the local newspaper on June 8, 2007, and that on July 11, 2007, the day after the "new" charges were filed, a second article was published.  (Id. at ¶ 62.)

6

Plaintiffs contend that on July 11, 2007, the Defendants:

> intent on revenge, whipped themselves into a frenzy and conspired together to hatch a plot to retaliate against the Plaintiff Donald Roach for 'beating' them by exposing their prior illegal activities alleged at civil action 4:CV[07] –0010 and securing a monetary settlement against the township of Ulster, and actively sought from that point forward to lie and make up any possible false charge for what they perceived Donald L. Roach had done to them, when in reality they all jointly and severally, sought to continue to violate the civil rights of the Plaintiff Donald Roach at all times, and either convict him of crimes, imprison him on false charges, and/or drive the Plaintiff Donald L. Roach and his family from the community.[5]

(Id.) (footnote added).

Plaintiffs claim that the Defendants sought to discriminate against Donald Roach because of his status as a disabled individual, purporting to invoke the Americans with Disabilities Act. (Id. at ¶ 63.) Specifically, Plaintiffs allege that Donald Roach is "both mentally and physically disabled with the mental disability of severe depression, paranoia, schizophrenia, and has the physical disability of degenerative disc disease, arthritis, clubfoot, and a left knee with 6 staples in it." (Id. at ¶ 5.) Plaintiffs aver that the Defendants asserted that Donald Roach "was an individual of low character and was 'freeloading' off of the government because he was collecting disability benefits and/or a disability pension, and was otherwise unable to prove to any or all of the Defendants' satisfaction that he was worthy of being a member of their community." (Id.) Plaintiffs further aver that Donald Roach "was made

---

[5] The Court notes that Plaintiffs appear to allege that the parties "whipped themselves into a frenzy" the day after the mooning incident charges were filed.

7

to suffer great emotional trauma, discomfort, and embarrassment, was deprived of his liberty, his personal and professional reputation was impaired, and he was forced to again retain counsel and pay counsel fees at great personal expense." (Id. at ¶ 64.)  Plaintiffs aver:

> The acts alleged above were committed either on the instruction of Defendants Kenneth Marrow, Chief of Police, and/or were thereafter approved and ratified by Ulster Township Supervisors Charles Cotter and Donald Tuttle, with their knowledge, approval, and consent, as well as the knowledge, instigation, influence, and/or participation of Kenneth Marrow's inferior officer, Defendant George Nichols, and Defendants John Adams, Jr., Cathy A. Cook, and Bryan Rogers.

(Id. at ¶ 65.)

Plaintiffs present six causes of action: 1) violation of Plaintiff Donald Roach's rights by all Defendants, brought pursuant to 42 U.S.C. § 1983; 2) conspiracy to violate Donald Roach's rights against all Defendants, brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3); 3) defamation of Donald, Deneen, Matthew, and Hannah Roachs' character by Cathy Cook; 4) malicious prosecution of Donald Roach by John Adams, Jr.; 5) malicious prosecution of Donald Roach by Bryan Rogers; and 6) malicious prosecution of Donald Roach by Bryan Rogers and John Adams, Jr.  Defendants have individually filed four motions to dismiss.  The motions have been fully briefed and are ripe for review.

## II. DISCUSSION

### A. Standard of Review

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to

"determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the cause of action." Id.

The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). As a result of Twombly, plaintiffs are required to nudge their claims "across the line from conceivable to plausible." Id. To state

a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above a speculative level." Id. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). As such, courts may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 127 S.Ct. at 1969; see also Phillips, 515 F.3d at 234 (in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).

More recently, the Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (May 18, 2009), reiterated that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the complaint should be dismissed. Id.

B. Count II- Conspiracy

1. 42 U.S.C. § 1985(3) Conspiracy

Count II of Plaintiffs' Amended Complaint avers that "the Defendants, both individually

10

and through their offices conspired to violate the civil rights of the Plaintiff Donald L. Roach, for

both political and other reasons in violation of 42 U.S.C. § 1985(3)." (Amend. Comp., Dkt. 30,

at ¶ 71.) Each Defendant has assailed the justiciability of this claim.

> The requirements for establishing a cause of action under 42 U.S.C. § 1985(3)
> are set forth in a line of Supreme Court cases beginning with the decision in
> Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).
> There, the Supreme Court clarified that the reach of section 1985(3) is limited to
> private conspiracies predicated on "racial, or perhaps otherwise class based,
> invidiously discriminatory animus." Id. at 102, 91 S.Ct. at 1798. The Court
> strictly construed the requirement of class-based invidious animus in United
> Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott, 436 U.S.
> 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding that commercial and
> economic animus could not form the basis for a section 1985(3) claim.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Consistent with these decisions, a plaintiff

must allege the following elements in order to state a claim pursuant to 42 U.S.C. § 1985(3):

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus
> designed to deprive, directly or indirectly, any person or class of persons to the
> equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4)
> an injury to person or property or the deprivation of any right or privilege of a
> citizen of the United States.

Id. The question here is whether Mr. Roach, by contending he suffers from mental and

physical health problems, qualifies as a member of a class protected under § 1985(3). If he

does fall within such a class, his pleading should be examined to determine whether the alleged

conspiracy "was motivated by discriminatory animus against an identifiable class and that the

discrimination against the identifiable class was invidious ." Farber v. City of Patterson, 440

F.3d 131, 135 (3d Cir.2006).

In <u>Lake</u>, the Third Circuit found that the "mentally retarded, as a class, are entitled to the protection afforded by section 1985(3)." The court, however, specifically noted that "[b]ecause the facts of [the] case do not require us to do so, we decline to define the class protected more broadly to include a wider range of handicapped in general." <u>Id.</u> at 686 n.5.

There is no need to address the question of whether a person claiming disability status within the ambit of the Americans with Disabilities Act falls within a class for purposes of asserting claims of a private conspiracy to deny equal protection of the laws as authorized by § 1985(3). As recognized by my esteemed colleague's decision in <u>Majewski v. Luzerne County, No. 3:05cv2396, 2007 WL 1074769 (M.D. Pa. Apr. 9, 2007)</u>, it is not enough that a plaintiff falls within a class entitled to sue under § 1985(3). Instead, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the plaintiff injury. As the Honorable James M. Munley explained:

> In order to state a claim, the plaintiff must allege not only that he is a member of a protected class, but that the conspiracy was "motivated by a discriminatory animus against an identifiable class." Plaintiff's claim is not that the conspiracy was motivated by a desire to prevent people with disabilities due to back problems from working as prison guards, but out of a desire to prevent him from working due to his disability. Accordingly, plaintiff does not allege a "discriminatory animus against an identifiable class," but a discriminatory attitude against him. <u>See</u> <u>Farber</u>, 440 F.3d at 136 (holding that there are "two requirements for a § 1985(3) claim: "that the conspirators be motivated by class-based invidiously discriminatory animus and that the plaintiff be the victim of an injury he or she seeks to remedy by means of § 1985(3). If merely alleging the latter could satisfy the former, 'the requirement of class-based animus would

be drained of all meaningful content, [citations omitted], and would transform §
1985(3) into the 'general federal tort law' Congress did not intend to enact.").

Id. at *8.

As in Majewski, the averments of Plaintiffs' pleading do not support a reasonable

inference that Defendants engaged in invidious, class-based discrimination against all persons

who may qualify as disabled under the ADA.  There is no allegation that Defendants target

disabled individuals for baseless criminal prosecution.  Nor is there any allegation that

Defendants have engaged in a pattern and practice of denying disabled persons the equal

protection of the laws.  Instead, as in Majewski, Plaintiffs merely claim that Defendants were

motivated to treat him harshly because of his disabled status. And not because of some class-

based, invidiously discriminatory animus.  As Judge Munley recognized in Majewski, such an

assertion does not present a viable claim under § 1985(3).[6]  Accordingly, Plaintiffs' claim under

---

[6] Plaintiffs have not cited any authority that would recognize as a class protected by §
1985(3) persons who have sued a municipality and/or its officials.  It is doubtful that such a
class exists or would fall within § 1985(3).  In Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 347
(5th Cir. 1981), the Fifth Circuit held that a group of "persons who have filed personal injury
lawsuits or workmen's compensation claims is neither a class based on political beliefs or
associations (the kind of class envisioned by the framers of the Ku Klux Klan Act [section
1985(3)]) nor a class 'having common characteristics of an inherent nature.'"  In Jacobson v.
Indust. Found. of Permain Basin, 456 F.2d 258, 259 (5th Cir. 1972), the Fifth Circuit affirmed a
district court's determination that Plaintiff had failed to state a claim when he argued that he
was a member of a protected class pursuant to section 1985(3), composed of people who had
filed similar workmen's compensation claims.  In Person v. New York Post Corp., 427 F. Supp.
1297, 1306 (E.D.N.Y. 1977), a court in the Eastern District of New York held that a class of
"private attorneys general who attempt to enforce their rights against persons with whom
defendant does business" is not a class cognizable under the Act.  Because section 1985(3)
does not provide a remedy for victims of conspiracies motivated by classification as a litigant,

§ 1985(3) will be dismissed.

### 2. 42 U.S.C. § 1983 Conspiracy

In addition to a conspiracy claim pursuant to section 1985(3), Plaintiffs also appear to have asserted a conspiracy claim pursuant to 42 U.S.C. § 1983. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999). "Unlike § 1985(3), a § 1983 conspiracy claim does not require that the conspiracy be motivated by invidious discrimination." Id.

### a. Ulster Township Defendants

It appears to be the Ulster Township Defendants' position that since Plaintiffs' section 1985(3) claim is without merit, their conspiracy claim pursuant to section 1983 must fail as well. Defendants' assertion, however, is incorrect. Plaintiffs' underlying claim is not the section 1985(3) conspiracy claim, but the constitutional violations they allege in the sixty-nine (69) paragraphs preceding Count II.

The Ulster Township Defendants focused their motion to dismiss solely on the validity of Plaintiffs' section 1985(3) claim and did not provide an argument in support of dismissing

---

Plaintiffs have failed to present a cognizable claim of conspiracy pursuant to section 1985(3), motivated by intent to discriminate on the basis of Plaintiff's freedom to petition. Cf. Farber, 440 F.3d at 143 ("we hold that § 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation"). Hence, the alternative basis for Plaintiffs' section 1985(3) claim is also unavailing.

Plaintiffs' section 1983 conspiracy claim. "In order to demonstrate the existence of a conspiracy under section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009). The averments of the amended complaint are adequate to sustain the § 1983 conspiracy claim at the pleadings stage. Accordingly, the section 1983 conspiracy claim in Count II of Plaintiffs' Amended Complaint as it applies against the Ulster Township Defendants survives.

b. Bryan Rogers

Bryan Rogers's position on this issue repeats that made by the Ulster Township Defendants. Defendant Rogers also seeks to persuade this Court that Plaintiffs' section 1983 claim is based solely on the validity of the section 1985(3) claim. This argument, however, as discussed above, is without merit. Consequently, Count II of Plaintiffs' Amended Complaint, insofar as it includes a claim against Bryan Rogers pursuant to section 1983, survives.

c. John Adams Jr.

In addition to moving for dismissal of the section 1985(3) conspiracy claim, Defendant John Adams, Jr. moved to dismiss the section 1983 conspiracy claim. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). Here, Plaintiffs have not alleged that John Adams, Jr. is a

15

state actor. "A private action is not converted into one under color of state law merely by some tenuous connection to state action." Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). Moreover, "merely complaining to the police does not convert a private party into a state actor for purposes of liability under § 1983." Bingaman v. Bingaman, No. 4:07cv2352, 2009 WL 242641, at *7 (M.D. Pa. Aug. 5, 2009).

A successful 1983 conspiracy suit against a private actor requires a showing that the private party and at least one of the state actors named as a defendant in the complaint "somehow reached an understanding to deny" a plaintiff his or her rights. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993). "Establishing the existence of this 'understanding,' however, is really nothing more than another way to show state action as required by § 1983 when a private party is alleged to have violated that statute." Id. Thus, "deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the non-state defendant] so that the action of the latter may be fairly treated as that of the State itself.'" Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

"'[I]t is a longstanding rule in the Third Circuit that a mere general allegation . . . or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim.'" Deangelo v. Brady, 185 F. App'x 173, 175 (3d Cir. 2006) (quoting Young v. Kahn, 926 F.2d 1396, 1405 n.16 (3d Cir.

16

1991)).  "In <u>Twombly</u>, the Supreme Court held that general allegations of conspiracy are not sufficient."  <u>St. Clair v. Citizens Fin. Group</u>, No. 08-4870, 2009 FL 2186515, at *2 (3d Cir. July 23, 2009) (citing <u>Twombly</u>, 550 U.S. at 555).  "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  <u>Twombly</u>, 550 U.S. at 556-57.

Plaintiffs aver that John Adams, Jr. testified as a witness against Donald Roach and had previously falsely reported that Donald Roach had stolen lawnmowers.  (Am. Comp., Dkt. 30, at ¶ 39.)  Plaintiffs aver that Adams lied to the court by making false sworn statements of material fact regarding Donald Roach and that he actively suborned perjury prior to trial by directing his son and Bryan Rogers to lie to the court.  (<u>Id.</u> at ¶¶ 40-41.)  Plaintiffs aver that Adams, along with all the other named Defendants, "whipped themselves into a frenzy and conspired together to hatch a plot to retaliate against the Plaintiff Donald Roach for 'beating' them by exposing their prior illegal activities . . . and actively sought . . . to lie and make up any possible false charge for what they perceived Donald L. Roach had done to them . . . ." (<u>Id.</u> at ¶ 62.) Furthermore, Plaintiffs aver that Cathy Cook and her brother John Adams, "encouraged them to retaliate against the Plaintiff Donald Roach," (<u>id.</u> at ¶ 55), and that the alleged acts were committed with the "knowledge, approval, and consent, as well as the knowledge, instigation, influence and/or participation of . . . John Adams, Jr., . . . ." (<u>Id.</u> at ¶ 65.)

Plaintiffs' averments are sufficient to support an inference of an agreement between

Adams and the state actors to engage in a malicious prosecution of Mr. Roach for the purposes of retaliating against him for the exercise of First Amendment rights. Stated otherwise, the allegations of the amended complaint are sufficient to nudge the § 1983 conspiracy claim against Adams from the possible to the plausible, and that is enough to avoid summary dismissal of the claim. See Twombly, 550 U.S. at 555.

### d. Cathy A. Cook

Like Defendant Adams, Cathy Cook also moved to dismiss the section 1983 conspiracy claim. Because the allegations are sufficient to support an inference that a conspiracy to retaliate against Mr. Roach existed, the motion to dismiss the § 1983 conspiracy claim against her will be denied.

### C. Count I - 42 U.S.C. § 1983

Each of the Defendants moved to dismiss the Fifth and Fourteenth Amendment due process claims of Plaintiffs' Amended Complaint. Plaintiffs clarified Count I in their briefs in opposition to the motions to dismiss, stating:

> Plaintiffs are not presenting any Fifth Amendment Due Process Claims, as the Defendants are not federal actors. (Plaintiffs' Fifth Amendment Claim is a Double Jeopardy claim.) Furthermore, Plaintiffs are not presenting any Fourteenth Amendment Substantive Due Process Claims.
> Instead, Plaintiffs are asserting claims under the Fourteenth Amendment that incorporate Plaintiffs' rights under the First, Fourth, and Fifth Amendment.

(Opp. Brief, Dkt. 44, at 3.)

"To prevail on a § 1983 civil rights claim, a party must show a deprivation of a

18

constitutional or statutory right by a person acting under color of state law. Non-state actors cannot be liable under 42 U.S.C. § 1983." Kougher v. Burd, 274 F. App'x 197, 198 n.1 (3d Cir. 2008). "'Although a private party may cause a deprivation of . . . a right, it may be subjected to liability under § 1983 only when it does so under color of law.'" Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)). "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." United States v. Price, 383 U.S. 787, 794 n.7 (1966). "Private persons, jointly engaged with state officials in the challenged action, are acting . . . 'under color' of law for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.'" Id. at 28 n.4. "[W]hen a complaint sufficiently alleges that the non-state actors conspired with the state through concerted action, the requisite state action may be present." Mayercheck v. Judges of Pennsylvania Supreme Court, Civ. A. No. 08-1112, 2009 WL 2524755, at *13 (W.D. Pa. Aug. 17, 2009).

  1. Bryan Rogers and Ulster Township Defendants

Bryan Rogers and the Ulster Township Defendants moved to dismiss only Plaintiffs' Fifth and Fourteenth Amendment due process claims in Count I. As Plaintiffs have stated they are not presenting a Fifth Amendment due process claim or a Fourteenth Amendment due

process claim (Dkt. 52, at 2-3), the Ulster Township Defendants and Bryan Rogers' motions as they relate to Count I will be granted.

### 2. John Adams, Jr. and Cathy Cook

Because Plaintiffs have alleged facts sufficient to support a section 1983 conspiracy claim involving Defendants Adams and Cook, their motions to dismiss the section 1983 claims will be denied.

### D. Count IV - Malicious Prosecution

Count IV of Plaintiffs' Amended Complaint presents a Pennsylvania common law claim against Defendant John Adams, Jr. for malicious prosecution. Pennsylvania law recognizes that a private actor, such as Defendant Adams, may be subject to liability for malicious prosecution:

> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
> (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
> (b) the proceedings have terminated in favor of the accused.

Shelton v. Evans, 437 A.2d 18, 20 (Pa. Super. Ct. 1981).

Here, it is uncontested that the proceedings terminated in favor of the accused. Thus, the Court is left to determine whether the amended complaint avers facts from which it may be inferred that Adams initiated or procured the proceedings without probable cause and for an improper reason. See id.

20

As explained in Margaret Auto Body, Inc. v. Universal Underwriters Group, No. 01750, 2004 WL 1073992, at *4 (Pa. Com. Pl. Ct. Apr. 12, 2004) (citing Bradley v. Gen. Accident Ins. Co., 778 A.2d 707, 710 (Pa. Super. Ct. 2001)):

> Before a court determines whether a plaintiff has demonstrated the absence of probable cause and the presence of malice for purposes of a malicious prosecution claim, it is appropriate for the court to determine whether the defendant either directly instituted the proceedings against the plaintiff or can be charged with responsibility for institution of the proceedings.

"A private person who gives information of another's supposed criminal misconduct to a public official does not constitute a procurement of the proceedings for purposes of a malicious prosecution claim if it is left entirely to [the] official's discretion to initiate the proceedings." Id. The Court in Bradley elaborated:

> "When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."

Bradley, 778 A.2d at 711 (quoting Restatement (Second) of Torts § 653 comment g).

Here, Plaintiffs aver that on September 24, 2007, the disorderly conduct charges against Donald Roach, stemming from the alleged mooning, were dismissed. (Amend. Comp., Dkt. 30, at ¶ 27.) Following this, on or about October 10, 2007, Defendant Kenneth Marrow re-filed the charges. (Id. at ¶ 28.) Plaintiffs aver that "[i]n so re-filing and adding additional charges against the Plaintiff Donald Roach, the Defendant Kenneth Marrow did so knowing that the charges were not only without legal probable cause, but in fact were factually false." (Id. at ¶ 29.) It is Plaintiffs' claim that Kenneth Marrow "did everything in his power" to prosecute Donald Roach and personally marshaled "the charges through the criminal justice system" in order to ensure that Donald Roach was prosecuted. (Id. at ¶ 31.) Plaintiffs aver that at the May 21, 2008 trial, John Adams, Jr. "[l]ied to the court and committed perjury in so doing by making false sworn statements of material issues of fact that the Defendant John Adams, Jr. knew were patently false." (Id. at ¶ 40.) Plaintiffs allege that "Cathy A. Cook actively used her influence and political power with her brother and all of the Defendants to encourage them to retaliate against the Plaintiff Donald Roach for the filing of the civil action at 4:CV 07-0010." (Id. at ¶ 55.) Moreover, Plaintiffs aver that all of the Defendants sought to lie and "make up any possible false charges for what they perceived Donald L. Roach had done to them," and that the alleged acts were committed with the "knowledge, instigation, influence, and/or participation of . . . John Adams, Jr." (Id. at ¶ 62, ¶ 65.) In sum, Plaintiffs aver:

> Defendant John Adams, Jr. encouraged Defendants Kenneth Marrow, George
> Nichols, and Bryan Rogers, as well as John Adams, Jr.'s minor son, Jay Adams
> to make false criminal charges against the Plaintiff Donald L. Roach, in order that
> the Plaintiff Donald L. Roach would be arrested by the Defendant Kenneth
> Marrow and/or the Defendant George Nichols, and to retaliate against the
> Plaintiff Donald L. Roach for filing the prior civil rights action at docket number
> 4:CV 07-0010, for securing a $10,000.00 settlement thereby, for having the
> original criminal charges dismissed against the Plaintiff Donald L. Roach in the
> original criminal case which led to the filing of the prior civil rights action at docket
> number 4:CV 07-0010 in which John Adams, Jr. was the complaining witness,
> and for personal animus and irrational hatred of the Plaintiff Donald L. Roach by
> the Defendant John Adams, Jr.

(Id. at ¶ 88.)

Plaintiffs' amended complaint withstands the heightened pleading standards of Iqbal.

Plaintiffs' bare assertions are "more than a 'formulaic recitation of the elements'" of a malicious

prosecution claim.  See Iqbal, 129 S.Ct. at 1951.  Accordingly, the motion to dismiss the

malicious prosecution claim against Defendant Adams will be denied.

E. Count V Malicious Prosecution

Plaintiffs' Amended Complaint avers that during the trial on May 21, 2008, "Bryan

Rogers lied to the court . . . by making false sworn statements of material issues of fact that the

Defendant Bryan Rogers knew were patently false."  (Amend. Comp., Dkt. 30, at ¶ 42.)

Moreover, Plaintiffs allege that Bryan Rogers and the other Defendants "whipped themselves

into a frenzy and conspired together to hatch a plot to retaliate against he Plaintiff Donald

Roach . . . and actively sought . . . to lie and make up any possible false charge for what they

perceived Donald L. Roach had done to them . . . ." (Id. at ¶ 62.)  In addition to these actions,

Plaintiffs allege that Donald Roach's arrest occurred with the "knowledge, instigation, influence, and/or participation of . . . Bryan Rogers." (Id. at ¶ 65.) In sum, Plaintiffs aver:

> Defendant Bryan Rogers made false criminal charges against the Plaintiff Donald L. Roach, in order that the Plaintiff Donald L. Roach would be arrested by the Defendant Kenneth Marrow and/or the Defendant George Nichols, and to retaliate against the Plaintiff Donald L. Roach for filing the prior civil rights action at docket number 4:CV 07 - 0010, for securing a $10,000.00 settlement thereby, for having the original criminal charges dismissed against the Plaintiff Donald L. Roach in the original criminal case which led to the filing of the prior civil rights action at docket number 4:CV 07 -0010 in which John Adams, Jr. was a complaining witness and for personal animus and irrational hatred of the Plaintiff Donald L. Roach by the Defendant Bryan Rogers, and to impress and simply "go along" with his friend and companion John Adams, Jr.

(Id. at ¶ 94.)

As with Plaintiffs' claim against Defendant Adams, Plaintiffs' claim against Bryan Rogers is sufficient to withstand the heightened pleading standards of Iqbal. Accordingly, the motion to dismiss this claim will be denied.

### F. Count VI - Malicious Prosecution

Count VI of Plaintiffs Amended Complaint appears to allege a malicious prosecution conspiracy between Bryan Rogers and John Adams, Jr. Plaintiffs aver:

> 100. Defendant John Adams, Jr. encouraged and solicited his friend, Bryan Rogers, to make false criminal charges against the Plaintiff Donald L. Roach, in order that the Plaintiff Donald L. Roach would be arrested by the Defendant Kenneth Marrow and/or the Defendant George Nichols.
>
> 101. The Defendant Bryan Rogers agreed to participate in the malicious prosecution of the Plaintiff Donald L. Roach with the Defendant John Adams, Jr.

(Amend. Comp., Dkt. 30, at ¶¶ 100-101.)  For the reasons set forth above, the motion to dismiss this claim will be denied.

III.    CONCLUSION

With the exception of the due process claims, which Plaintiffs concede are not viable, and the claim brought under 42 U.S.C. § 1985(3), the causes of action presented in the amended complaint survive scrutiny under the heightened pleadings standards of Iqbal.  An appropriate Order follows.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


DONALD L. ROACH, DENEEN ROACH,       :
MATTHEW ROACH, HANNAH ROACH,         :
        Plaintiffs                          :
                              :
      v.                                 :       3:CV-08-1136
                              :       (JUDGE VANASKIE)
CHIEF OF POLICE KENNETH MARROW,      :
JOHN ADAMS, JR., CATHY A. COOK,      :
CHARLES COTTER, Ulster Township      :
Supervisor, DONALD TUTTLE, Ulster    :
Township Supervisor, GEORGE          :
NICHOLS, Police Officer, BRYAN       :
ROGERS,                              :
        Defendants                          :

ORDER

       NOW, THIS 24th DAY OF SEPTEMBER, 2009, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

       1.  Defendants' Motions to Dismiss (Dkt. 31, 33, 34 and 35) are GRANTED IN PART.

The claims for violation of the due process clauses of the Fifth and Fourteenth Amendments

and for violation of 42 U.S.C. § 1985(3) are DISMISSED.  In all other respects, the Motions to

Dismiss are DENIED.

       2.  A Telephone Scheduling Conference shall be held on October 20, 2009, at 1:00

p.m.  Plaintiffs' counsel is responsible for placing the call to (570) 207-5720, and all parties

should be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge