## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD ROACH, et al.,                   :
                                        :
               **Plaintiffs**           :
     v.                                 :      **3:08-CV-1136**
                                        :      **(JUDGE MARIANI)**
KENNETH MARROW, et al.,                 :
                                        :
               **Defendants**           :

## MEMORANDUM AND ORDER

### I. Introduction

Before the Court are Defendants' Motion to Strike (Doc. 96), Motion for Summary

Judgment filed by Defendants Marrow and Nichols (Doc. 79), and Magistrate Judge

Thomas Blewitt's Report & Recommendation ("R&R") (Doc. 107). For the reasons below,

the Court will adopt in part and reject in part the R&R, will strike certain portions of Plaintiff

Donald Roach's affidavit (Doc. 94, Ex. 3), and will grant in part and deny in part summary

judgment to Defendants Marrow and Nichols.

### II. Statement of Facts and Procedural History

Before initiating this lawsuit, Plaintiff Donald Roach had filed a lawsuit in early 2007

against Defendant Kenneth Marrow for falsely arresting him based on charges that he stole

property from his neighbor, John Adams, Jr. (Doc. 94, Ex. 1, at 11-15). That civil suit

settled, and Plaintiff received a $10,000 check dated May 22, 2007. (Id. at 19-24). Of the

settlement, Ulster Township purportedly paid $2,500 with the remainder covered by the

Township's insurance. (Doc. 94, Ex. 2, at 2).

Soon after the settlement, Plaintiff alleges that Donald Tuttle ("Tuttle"), a township

supervisor, threatened him:

> Don, I don't think you're funny bringing a lawsuit against the township and winning. I discussed it with [Cotter and Prough] and the cops. We're mad about the lawsuit and the township having to pay the $2,500.00 deductible on the insurance policy. And I promise you, you will be paying for it. You'd better watch your ass!

(Roach Aff., Doc. 94, Ex. 3, ¶ 9). According to Plaintiff, another township supervisor, Louis

Prough ("Prough") revealed that there was a conspiracy afoot to retaliate against Plaintiff for

winning the settlement:

> Louis told me at that time that the other two supervisors, Charles Cotter, and Donald Tuttle, were mad about the lawsuit and so were the cops, Kenneth Marrow and George Nichols. Louis Prough told me to "watch my back," and with specific reference to Cotter, Tuttle, Marrow, and Nichols, "they're conspiring against you," "they're plotting against you" and that "you're going to be arrested again." Louis Prough also told me that "Cotter is telling the cops to file false charges against you." Louis Prough also told me that John Adams, Jr., was involved, too, in the plot against me because he had originally complained about me to Cotter and Kenneth Marrow, and was friends with Cotter and Marrow.
>
> Louis Prough also told me . . . that John Adams' sister, Cathy Cook, was involved with Adams and the other Ulster township supervisors in wanting to get me arrested again because of the first lawsuit, as she was friends with them and she also had a connection to the other supervisors through the local Recreation Board, which received some money from Ulster township.

(*Id.* at ¶¶ 12, 26). The outcome of the prior lawsuit displeased certain defendants.

Defendant Cook, Adams's sister, circulated an e-mail claiming that "they'll get [Plaintiff]

sooner or later," (Doc. 94, Ex. 4A), and former Defendant Cotter expressed his displeasure at the publication of the settlement in the press (Cotter Dep., Doc. 94, Ex. 12, 30:24-31:10).

Within seven weeks of settling the prior case, John Adams, Jr. ("Adams") again called the police, this time to report that Plaintiff had mooned[1] him. (Doc. 94, Ex. 7A, Complaint Report with date received of July 10, 2007). Defendant Nichols arrived at Plaintiff's residence upon receiving a call from dispatch. (Nichols Dep., Doc. 94, Ex. 7, 11:6-22). He interviewed Adams, Bryan Rogers (a friend of Adams), and Jay Adams (Adams's minor son). (*Id.* at 11:22-12:21). He then interviewed Plaintiff, but no other witnesses, such as Matthew Pryne or Dustin Middaugh, despite Plaintiff's requests to do so. (*Id.* at 12:21-13:22; 53:19-21, 54:19-20; Roach Aff., Doc. 94, Ex. 3, ¶ 19).

According to his own deposition testimony, Nichols knew Plaintiff had filed a lawsuit against the township but did not know the reason for it. (Nichols Dep., Doc. 94, Ex. 7, 10:1-15). When Nichols interviewed Plaintiff, Nichols states that Plaintiff asked him why he was there, considering that he had just won a settlement from the township. Nichols then responded, "You did not sue me, you sued the township." (*Id.* at 12:23-25). Plaintiff corroborates this statement. (Roach Aff., Doc. 94, Ex. 3, ¶ 19). Nichols claimed, though, that he had never discussed Plaintiff with Marrow before the citation for disorderly conduct. (Nichols Dep., Doc. 94, Ex. 7, 19:25-20:3). Yet Marrow testified at his deposition that when he hired Nichols, he briefed Nichols about the lawsuit. (Marrow Dep., Doc. 94, Ex. 8, 28:10-

---

[1] Throughout the pleadings, both parties have referred to this act as "mooning," a slang expression recognized as the act of deliberately exposing one's buttocks. This opinion will accordingly use the term not for its propriety but because the parties have used it in framing their respective arguments.

3

21).  At Nichols's deposition, in response to whether he did anything to investigate the mooning allegation other than interview witnesses, Nichols said no.  His reasoning was that "it's witness testimony against somebody else, their witness statements, what they make to the court, against him.  The Judge decides." (Nichols Dep., Doc. 94, Ex. 7, 55:2-8).  Upon concluding these interviews, Defendant Nichols issued a non-traffic citation for disorderly conduct.  (Doc. 94, Ex. 7A).

A few days later, Plaintiff received the citation in the mail.  (Roach Aff., Doc. 94, Ex. 3, ¶ 24).  On the date of the hearing, September 24, 2007, the prosecution witnesses did not appear, so Magistrate Judge Clark dismissed the case against Plaintiff.  (*Id.* at ¶ 28). Upon learning of the dismissal, Defendant Marrow asked Adams whether he wanted to press charges.  (Adams Dep., Doc. 94, Ex. 10, 87:18-89:19. 99:6-101:11).  After receiving agreement from Adams, Marrow re-filed the disorderly conduct charge against Plaintiff, along with a misdemeanor charge of open lewdness.  (Marrow Dep., Doc. 94, Ex. 8, 47:15-18).  Defendant Marrow reviewed the three witness statements from Adams, Jay, and Defendant Rogers.  (*See* statements attached to Doc. 94, Ex. 8F).  Marrow did not conduct an independent investigation but rather relied on Nichols's previous report.  (Marrow Dep., Doc. 94, Ex. 8, 53:17-56:12).

At a preliminary hearing on December 7, 2007, Magistrate Judge Timothy Clark found that Defendants had established a *prima facie* case against Plaintiff and held the charges over for trial.  (Prel. Hrng. Tr., Doc. 94, Ex. 15, 33:2-6).  At the time, Plaintiff claims

4

he "overheard Nichols talking to someone at the district justice office, and I heard him say in reference to me 'Chuck Cotter wanted him arrested.'" (Roach Aff., Doc. 94, Ex. 3, ¶ 31). At the trial before Judge Saxton on May 21, 2008, the Commonwealth moved to dismiss one of the disorderly conduct charges and the open lewdness charge, proceeding only on the disorderly conduct charge under section 5503(a)(4). (Trial Tr., Doc. 94, Ex. 16, 1:17-22). Upon oral motion by Plaintiff, the Judge dismissed the remaining disorderly conduct charge, stating that "at best, it's a *deminimis* [sic] infraction of the law that doesn't belong in this Court." (*Id.* at 45:6-7).

Originally, there were seven named defendants in this suit: Kenneth Marrow, Cathy Cook, George Nichols, Bryan Rogers, John Adams, Jr., Donald Tuttle, and Charles Cotter. Earlier in the case, the parties stipulated to dismissing Defendant Tuttle due to his death. (Doc. 65). They later stipulated to the dismissal of Charles Cotter as a defendant (Doc. 77), Cathy Cook from Counts I and II (Doc. 76), and the dismissal of John Adams, Jr. as a party. (Doc. 105).

Thus, the remaining claims are Plaintiff Donald Roach's First Amendment retaliation and § 1983 conspiracy claims against Defendants Marrow and Nichols (Counts I and II) and his Fourth and Fifth Amendment claims against Defendant Marrow only (Count I). Count III for defamation remains against Defendant Cook, and Counts I, II, and V/VI for claims of retaliation,[2] conspiracy, and malicious prosecution, remain against Defendant Rogers.

---

[2] Judge Vanaskie found that these counts (Fourteenth Amendment claims that incorporated Plaintiff's rights under the First, Fourth, and Fifth Amendment) under § 1983 survived Rogers's motion to dismiss because

## III. Standards of Review

### A. Magistrate Judge's Report & Recommendation

When a party files objections to a magistrate judge's report and recommendation, the

district court must perform a *de novo* review of the contested portions of the report. 28

U.S.C. § 636(b)(1)(c)). The Federal Magistrates Act does not require a district court to

review a report and recommendation in the absence of objections. However, the Third

Circuit has held that courts should "afford some level of review to dispositive legal issues

raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). The

advisory committee notes to FED. R. CIV. P. 72(b) state that "[w]hen no timely objection is

filed, the court need only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." *See also Cruz v. Chater*, 990 F.Supp. 375, 378 (M.D.

Pa. 1998).

### B. Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not

present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough*

---

Rogers moved to dismiss only the due process claims under the Fifth and Fourteenth Amendments. (Doc. 56, at 18-20). Plaintiff's Amended Complaint indicates (Doc. 30, ¶¶ 47, 67) that his First Amendment claim was for retaliation, Fourth Amendment claim was for unlawful arrest, and Fifth Amendment claim was for exposure to double jeopardy.

*Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## IV. Discussion

### A. Motion to Strike

The Court begins its discussion with Defendants' Motion to Strike because it will affect the Court's discussion of the Motion for Summary Judgment. FED. R. CIV. P. 56(c)(4) requires affidavits submitted in connection with summary judgment motions to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Parties may challenge

affidavits that are not in conformity with Rule 56(e) through motions to strike.[3]  *See, e.g., In re Unisys. Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996); *Aronson v. Capital One Fin. Corp.*, 125 F. Supp. 2d 142, 143-44 (W.D. Pa. 2000).

Judge Blewitt recommended that paragraphs 20, 27, and 30 be stricken because they contain legal conclusions or statements of belief.  The Court declines to adopt this recommendation because other than the words "I believe" in paragraph 20, the remainder of the paragraph is largely based on Plaintiff's personal observations or knowledge.  The Court need not adopt Plaintiff's legal conclusions as its own in paragraphs 27 and 30, and it will accordingly assign such legal conclusions or conjectures no evidentiary value in determining the summary judgment motion.

With respect to paragraphs 9 and 38, Plaintiff claims that before his death and while still a party, Donald Tuttle revealed that he and the other township supervisors along with Marrow and Nichols were angry about the settlement and promised retribution.  After Tuttle's death, the parties stipulated that he would be removed as a defendant from the case.  (Doc. 62).  Defendants argue that Tuttle's removal as a party precludes his statements as an admission by a party opponent under 801(d)(2)(A),[4] and there is

---

[3] By striking certain portions of Plaintiff's affidavit, the Court is not implying that it finds the stricken portions scandalous or stated in bad faith.  Rather, it finds portions of the affidavit are inadmissible hearsay and therefore not properly before the Court on Defendant's motion for summary judgment.

[4] While a party's death does not render a party admission inadmissible as hearsay (*Savarese v. Agriss*, 883 F.2d 1194, 1200 (3d Cir. 1989)), Rule 801 states a declaration is not hearsay if ""the statement is offered against an opposing party and was made by the party in an individual or representative capacity."  Implicit in that statement is that the party must remain a party at all stages of the litigation including through trial.

insufficient independent evidence of a Tuttle's involvement in a conspiracy to use his statements against the named co-conspirators under 801(d)(2)(E).

Judge Blewitt agreed and recommended striking the statement under Rule 801. However, neither Defendants nor Judge Blewitt addressed whether Tuttle's alleged statements would be admissible under Rule 804(b)(3)(A). Tuttle is clearly unavailable as a witness because he is dead, and Rule 804 does not require that the declarant be a party. Moreover, Tuttle's statement would have exposed him to civil liability, thus meeting the requirements of the rule to be admissible. Although the statements are admissible, the nature of this evidence will impact the weight that a jury gives it. *Savarese*, 883 F.2d at 1201.

Next, Judge Blewitt recommended striking paragraphs 12 and 26, which refer to conversations that Plaintiff allegedly had with Louis Prough. (Roach Aff., Doc. 94, Ex. 3, ¶¶ 12, 26). Because Prough is not a party to this action, his statements are not party admissions under FED. R. EVID. 801(d)(2)(A), and because Prough would be available to testify at trial, these are not statements against interest under 804(b)(3). Plaintiff is presenting these statements to assert the truth of the matters stated, so they are not declaratory acts. Neither do they qualify under the rigorous and exacting standards of the residual exception, Rule 807, especially in light of Prough's emphatic denials of ever having made these statements to Plaintiff. (Prough Dep., Doc. 94, Ex. 21). Last, they are not statements of a co-conspirator in furtherance of a conspiracy under 801(d)(2)(E). Although

Tuttle's statement implicates Prough in the alleged conspiracy against Plaintiff which could constitute independent evidence of Prough's involvement in a conspiracy, Prough's statements to Plaintiff are not admissible under 801(d)(2)(E). Although they are being used against an opposing party (i.e. Marrow and Nichols) and were made by an alleged co-conspirator (Prough) during the course of the conspiracy, they were not made "in furtherance of the conspiracy" under Third Circuit jurisprudence. "A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator." *United States v. Weaver*, 507 F.3d 178 (3d Cir. 2007) (citing *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983) ("Statements between conspirators which . . . inform each other of the current status of the conspiracy further the ends of the conspiracy.") (emphasis in original)). Prough's alleged statements regarding Defendants' plans to file false charges against Plaintiff so he would be arrested were made to Plaintiff, who was clearly not a co-conspirator against himself. As such, they could not have been made "in furtherance of a conspiracy," so they are inadmissible. Therefore, the Court will adopt Judge Blewitt's recommendation and strike these paragraphs from Plaintiff's affidavit.

Finally, with respect to paragraph 31, the Court does not find that the affidavit was in direct contradiction with Plaintiff's prior deposition testimony, so the sham affidavit doctrine would not apply. *See Jiminez v. All-American Rathskellar, Inc.*, 503 F.3d 247, 253-54 (3d Cir. 2007). In response to a question about how Plaintiff "knew" Chuck Cotter directed

Marrow and Nichols to file fraudulent charges against him, Plaintiff began to say at his deposition that he had overheard Defendant Nichols "talking to somebody" "at the district magistrate's office" (Roach Dep., Doc. 81, Ex. 1, at 68:6-21). In his affidavit, he expanded on this answer and stated he had "overheard Nichols talking to someone at the district justice office, and I heard him say in reference to me 'Chuck Cotter wanted him arrested.'" (Roach Aff., Doc. 94, Ex. 3, ¶ 31). Thus, the Court rejects Judge Blewitt's recommendation to strike this paragraph and will allow it to stand.

In summary, the Court rejects Judge Blewitt's Report & Recommendation and will not strike paragraphs 9, 15, 19, 20, 27, 30, 31, and 38. The Court adopts Judge Blewitt's Report & Recommendation and will strike paragraphs 21 and 26 as inadmissible hearsay.

## B. Motion for Summary Judgment

Defendants Marrow and Nichols move for summary judgment on the counts against them: Count I alleging First Amendment retaliation under 42 U.S.C. § 1983 against both Marrow and Nichols, Count II alleging a conspiracy to retaliate under § 1983 against both Marrow and Nichols, and Count I alleging Fourth Amendment false arrest and a Fifth Amendment double jeopardy claim under § 1983 against Marrow only.

### 1. Double Jeopardy claim

At the outset, Plaintiff states that he does not object to Judge Blewitt's recommendation to dismiss the double jeopardy claim against Marrow. (Doc. 108, at 1). Upon reviewing the recommendation as to this claim for clear error, the Court adopts the

recommendation because it is undisputed that Plaintiff's first trial was dismissed due to the complaining witnesses' non-appearance and before the court heard any evidence. (Marrow Dep., Doc. 94, Ex. 8E; (Roach Aff., Doc. 94, Ex. 3, ¶ 28). Therefore, the trial held before Judge Saxby after the charges were re-filed against Plaintiff did not give rise to a double jeopardy claim. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977) (finding the "state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence."). The Court adopts the R&R and grants Marrow's motion for summary judgment on Plaintiff's Fifth Amendment double jeopardy claim.

## 2. First Amendment Retaliation claim

On a First Amendment retaliation claim, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Although Magistrate Judge Clark found that the state had established a *prima facie* case against Plaintiff at the December 7, 2007 preliminary hearing (Prel. Hrng. Tr., Doc. 94, Ex. 15), that determination cannot sway the Court on its independent probable cause inquiry. "The common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." *Merkle*, 211 F.3d at 789. Judge Blewitt concluded that Plaintiff's act of filing a lawsuit which resulted in the $10,000

12

settlement was constitutionally protected conduct, and that an arrest for mooning in retaliation for that action would sufficiently deter a person from exercising his First Amendment rights. The Court agrees. However, Judge Blewitt did not file a causal link between the previous lawsuit and the alleged retaliatory arrest.

Plaintiff points to the temporal link between the settlement and the charges for disorderly conduct (approximately seven weeks), an e-mail from Adams's sister, Defendant Cook, claiming that "they'll get [Plaintiff] sooner or later," (Doc. 94, Ex. 4A), the alleged threat from Tuttle that the township supervisors and police would ensure that Plaintiff paid for his victory in the lawsuit (Roach Aff., Doc. 94, Ex. 3, ¶ 9), former Defendant Cotter's displeasure that the terms of the settlement had been disclosed through newspaper publications (Cotter Dep., Doc. 94, Ex. 12, 30:24-31:10), and Nichols's alleged statement that "Cotter wanted [Plaintiff] arrested" (Roach Aff., Doc. 94, Ex. 3, ¶ 31) as evidence of retaliatory animus on the parts of Marrow and Nichols. Plaintiff also says that once the initial summary disorderly conduct charge was dismissed, Marrow improperly solicited Adams's approval to re-file the charges against him. (Adams Dep., Doc. 94, Ex. 10, 87:18-89:19. 99:6-101:11).

It is undisputed that Nichols took statements from Adams, Rogers, and Adams's minor son Jay, and that he spoke to Plaintiff. It is also undisputed that he interviewed no one else. Plaintiff argues there are two serious failures on Nichols's part. First, Nichols failed to interview a witness (*e.g.*, Matthew Pryne, Dustin Middaugh) for Plaintiff who would

have supported Plaintiff's denial that he ever mooned anyone. Nichols also admits he did

not conduct a line of sight investigation to see whether the complaining witnesses could

have observed Plaintiff mooning them. What is in doubt is how much Nichols knew about

the history between Adams and Plaintiff or Plaintiff's prior lawsuit against Marrow. Nichols

was not a party to the first lawsuit and was hired sometime afterwards. According to his

own deposition testimony, he knew Plaintiff had filed a lawsuit against the township but did

not know the reason for it. (Nichols Dep., Doc. 94, Ex. 7, 10:1-15). When Nichols

interviewed Plaintiff, Nichols states that Plaintiff asked him why he was there in light of

Plaintiff's first case. Nichols then responded, "You did not sue me, you sued the township."

(Id. at 12:23-25). Plaintiff corroborates this statement. (Roach Aff., Doc. 94, Ex. 3, ¶ 19).

Nichols claimed, though, that he had never discussed Plaintiff with Marrow before the

citation for disorderly conduct. (Nichols Dep., Doc. 94, Ex. 7, 19:25-20:3). Yet Marrow

testified at his deposition that when he hired Nichols, he briefed Nichols about the lawsuit.

(Marrow Dep., Doc. 94, Ex. 8, 28:10-21). It is unclear from the record whether Nichols knew

that Adams had been the complaining witness in the prior lawsuit.

  As to the first allegation, multiple cases have held that a statement from a credible

complaining witness is enough to establish probable cause and once probable cause is

established in an officer's mind, he need not conduct an "exhaustive investigation." *Merkle*,

211 F.3d at 789, n.8 (finding in response to the plaintiff's argument that the officer had failed

to interview other witnesses, including the arrestee, that the officer "had every reason to

believe a credible report from a school principal who witnessed the alleged crime. This report alone sufficiently established probable cause. [The police officer] was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874 (E.D. Pa. 2006) ("when an officer has received his information from some person-normally the putative victim or an eyewitness-who it seems reasonable to believe is telling the truth, he has probable cause to arrest the accused perpetrator."). In *Karkut*, the defendant officer relied on the "credible report of an eyewitness," (a store security guard) who stated to the defendant that "she had personally seen Plaintiff conceal the items in a plastic bag." 453 F. Supp. 2d at 884. Logically, the converse would be true: if the defendant officer relies solely on reports of eyewitnesses whose credibility is in dispute, then there may not be probable cause to warrant an arrest.

Here, Nichols interviewed the three complaining witnesses and also interviewed Plaintiff before writing the citation. Under normal circumstances, such conduct would be sufficient to establish probable cause. However, an extra factor in this case is how familiar Nichols was with the details of the first lawsuit. Drawing all reasonable inferences in favor of Plaintiff, Nichols may have known the particulars of the prior lawsuit before arriving on the scene when investigating the mooning complaint. For instance, he may have known that Adams had been the complaining witness in the first of Plaintiff's lawsuits. Defendant Rogers is a friend of Adams, and the other witness was Adams's minor son, Jay. If Nichols

knew these facts, for him to interview only interested parties when other neutral parties were available for interview points to a lack of probable cause.

Another complication is that Nichols did not conduct a line of sight inquiry. At his deposition, in response to whether he did anything to investigate the mooning allegation other than interview witnesses, he said no. His reasoning was that "it's witness testimony against somebody else, their witness statements, what they make to the court, against him. The Judge decides." (Nichols Dep., Doc. 94, Ex. 7, 55:2-8). Because the elements of the disorderly conduct charge include making an "obscene gesture." (See n.1), it seems reasonable that an officer should check whether anyone could see someone mooning him. Because Nichols admitted he did not, there is an issue of whether probable cause existed to issue the citation.

Marrow reviewed the three witness statements from Adams, his minor son, and Defendant Rogers. (See statements at Doc. 94, Ex. 8F). In addition to the errors he attributes to Nichols, Plaintiff asserts that Marrow improperly solicited Adams's consent to re-file charges against Plaintiff after the summary disorderly conduct charge was dismissed the first time. (Adams Dep., Doc. 94, Ex. 10, 87:18-89:19. 99:6-101:11). Marrow did not conduct an independent investigation but rather relied on Nichols's previous report. (Marrow Dep., Doc. 94, Ex. 8, 53:17-56:12). Considering Marrow's previous litigation with Plaintiff and his interactions with Adams who was the complaining witness in both criminal cases against Plaintiff, there is an issue of fact as to why Marrow did not conduct an

independent investigation to corroborate Adams's and Rogers's statements. Because the record is too unclear to the Court for it to determine whether Nichols had probable cause to issue the first citation, it is equally difficult to determine whether Marrow had probable cause to re-file charges against Plaintiff based on the same evidence on which Nichols relied.

Therefore, because the record is unclear as to what Nichols knew about the prior lawsuit and Plaintiff's contentious relationship with Adams, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that there is a dispute as to whether there was probable cause because Nichols interviewed only those witnesses who may have had ulterior motives for giving their statements. Because there may not have been probable cause for the first citation, a second citation that relied on Nichols's report without a separate investigation likewise would be susceptible to a lack of probable cause claim. Therefore, the Court rejects Judge Blewitt's recommendation and denies Defendants Marrow and Nichols summary judgment on Plaintiff's First Amendment retaliation claim.

### 3. Conspiracy claim

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "[T]o demonstrate the existence of a conspiracy under section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009).

The Court is excluding any statements by Prough, so the only remaining evidence of conspiracy amongst the defendants are: (1) Tuttle's alleged threat, (2) Nichols's alleged statement at the preliminary hearing that "Cotter wanted [Plaintiff] arrested," (3) the e-mail from Cathy Cook, and (4) Cotter's displeasure over the disclosure of the settlement terms in multiple newspaper articles.  The outcome hinges largely on Tuttle's statement, because Tuttle allegedly said that he, Cotter, and the police officers intended to get back at Plaintiff for the first lawsuit.

This is essentially the only statement that points to any kind of agreement amongst the defendants to punish Plaintiff for filing and winning a settlement in his previous lawsuit. Plaintiff has produced just enough evidence to survive a motion for summary judgment, so the Court will reject Judge Blewitt's recommendation and deny summary judgment to Defendants Marrow and Nichols on this claim.

### 4. Fourth Amendment Unlawful Arrest/Malicious Prosecution claim[5]

Plaintiff claims Marrow unlawfully arrested him when he re-filed two charges against Plaintiff in October 2007 after the initial summary offense of disorderly conduct was dismissed by Magistrate Judge Clark. Marrow filed two charges against Plaintiff regarding the alleged July 10, 2007 mooning incident. (Doc. 94, Ex. 8E). He filed one summary

---

[5] There is some confusion on this count. Plaintiff's Amended Complaint (Doc. 30) indicates he is suing for "unlawful arrest," but Judge Vanaskie interpreted it as a malicious prosecution claim (Doc. 56). Defendants' brief in support of summary judgment focused on false arrest elements (Doc. 82), while Plaintiff responded as if it were a malicious prosecution claim (Doc. 93). Both claims require lack of probable cause and a seizure, so the differences are largely academic in nature.

disorderly conduct charge under 18 P.S. § 5503(a)(3)[6] and one misdemeanor third degree charge of open lewdness under 18 P.S. § 5901.[7]   (*Id.*).   When the charges were bound over for trial after the preliminary hearing, the District Attorney's Office added another summary disorderly conduct offense under 18 P.S. § 5503(a)(4).[8]  At the trial before Judge Saxton on May 21, 2008, the Commonwealth moved to dismiss one of the disorderly conduct charges and the open lewdness charge, proceeding only on the disorderly conduct charge under section 5503(a)(4).  (Trial Tr., Doc. 94, Ex. 16, 1:17-22).

Both malicious prosecution claims and false arrest claims require a lack of probable cause to establish a *prima facie* claim.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).  The Court will not repeat its above discussion of probable cause here.  Yet, even if there were insufficient probable cause for Marrow and Nichols to file criminal charges against Plaintiff, to establish a *prima facie* Fourth Amendment claim, Plaintiff would have to show that he was seized.  *See Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (conducting Fourth Amendment analysis for the plaintiff's false arrest claim, beginning with whether he was seized, if so, whether the seizure was reasonable, and if so, who was liable).

---

[6] "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he uses obscene language, or makes an obscene gesture."

[7] "A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed."

[8] "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Under *Dibella v. Borough of Beachwood*, 407 F.3d 599, 600-01 (3d Cir. 2005), "having to attend pretrial and trial hearings [does] not constitute a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action predicated on the Fourth Amendment." In *Dibella*, the plaintiffs were not arrested, indicted, or ever in police custody, and their freedom of movement was not restricted in a significant way. *Id.* at 602-03. *Compare Gallo*, 161 F.3d at 222 ("Gallo's post-indictment liberty was restricted in the following ways: he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania."). Here, Plaintiff was never arrested or in police custody. Rather, he received his criminal charges in the mail. (Roach Aff., Doc. 94, Ex. 3, ¶ 24). He also did not have to post money bond. His bail bond's only restrictions were to have "no contact with the victims or witnesses what so ever [sic]" until trial. (Doc. 94, Ex. 17). He had no travel restrictions, so his freedom of movement was not impinged in any way. Unlike the plaintiff in *Gallo*, Plaintiff was not seized for purposes of the Fourth Amendment. The Court, therefore, adopts Judge Blewitt's recommendation and grants Marrow's motion for summary judgment on Plaintiff's Fourth Amendment claim.

## 5. Punitive Damages

Plaintiff is suing Marrow and Nichols for monetary damages in both their official and personal capacities. To win monetary damages, though, Plaintiff can sue defendants in their individual capacities only. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109

S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Indep. Enter. Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1173 (3d Cir. 1997). Therefore, the Court will adopt the R&R and dismiss Counts I and II against Marrow and Nichols in Defendants' official capacities.

Punitive damages are available against state or local officials in their personal capacities when their conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Because the Court has decided to deny summary judgment on the retaliation and conspiracy claims, there is a possibility that Plaintiff may be able to establish these claims at trial. If he does, punitive damages may be available, so it is pre-mature for the Court to release Defendants from liability on this issue.

### 6. Defendant Bryan Rogers

Finally, one of the remaining defendants, Bryan Rogers, is subject to a count of malicious prosecution.[9] Because the Court finds there was no seizure as a matter of law, Defendant Rogers could not have maliciously prosecuted Plaintiff. While, district courts have the authority to *sua sponte* grant summary judgment without notice when the non-moving party would not be prejudiced by lack of notice, the Third Circuit has stated that the preferred method is to provide notice to the non-moving party. *Gibson v. Mayor of Council*

---

[9] Review of the many stipulations in this case shows that Rogers was not dismissed on Counts I and II for retaliation and conspiracy. Counts V and VI both named Rogers as a defendant for a malicious prosecution claim, one as the sole defendant and the other with Adams. Because the claims are identical and Adams is no longer a party, the Court considers only one claim of malicious prosecution remains against Rogers.

*of City of Wilmington*, 355 F.3d 215. 224-25 (3d Cir. 2004). Though the Court doubts Plaintiff would be prejudiced by lack of notice given that he has already had the opportunity to respond to the Township defendants' motion for summary judgment, the Court will direct Plaintiff to show cause why the Court should not grant summary judgment in favor of Defendant Rogers on this count.

## V. Conclusion

The Court adopts in part and rejects in part Judge Blewitt's Report & Recommendation (Doc. 107), grants in part and denies in part Defendants' Motion to Strike (Doc. 96), grants in part and denies in part Defendants' Motion for Summary Judgment (Doc. 79), and an appropriate order follows.

There is a genuine issue of material fact over whether Nichols had probable cause to issue the first citation and whether Marrow had probable cause to issue the second charge. Because there is doubt over the existence of probable cause, the First Amendment Retaliation claim survives against both Marrow and Nichols. In addition to the dispute over probable cause, because of Tuttle's statement, the Court denies the motion for summary judgment on the conspiracy claim against Marrow and Nichols.

Plaintiff has not demonstrated that he was seized under Fourth Amendment jurisprudence, so he was neither falsely arrested nor maliciously prosecuted. He has conceded to Judge Blewitt's determination that he was not prosecuted twice, violating double jeopardy, so the Court adopts Judge Blewitt's recommendation to grant Marrow's

22

motion for summary judgment on the Fourth and Fifth Amendment counts. Because the
Court has found there was no seizure under the Fourth Amendment claim, it directs Plaintiff
to show cause why summary judgment should not be granted to Defendant Rogers on this
claim, as well.

Robert D. Mariani
United States District Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD ROACH, et al., | : | |
| | : | |
| **Plaintiffs** | : | |
| **v.** | : | **3:08-CV-1136** |
| | : | **(JUDGE MARIANI)** |
| KENNETH MARROW, et al., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this **28TH DAY OF MARCH, 2012,** upon consideration of

Defendants' Motion for Summary Judgment (Doc. 79), Defendants' Motion to Strike (Doc.

96), Magistrate Judge Blewitt's Report and Recommendation (Doc. 107), Plaintiff's

Objections (Doc. 108), and all accompanying briefs, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Objections (Doc. 108) are overruled in part and sustained in part.

2. Judge Blewitt's Report & Recommendation (Doc. 107) is adopted in part and
   rejected in part.

3. Defendants' Motion to Strike (Doc. 96) is granted in part and denied in part.

   a. The Court rejects Judge Blewitt's Report and Recommendation and
      will not strike paragraphs 9, 15, 19, 20, 27, 30, 31, and 38.

   b. The Court adopts Judge Blewitt's Report and Recommendation and
      will strike paragraphs 21 and 26 as inadmissible hearsay.

4. Defendants' Motion for Summary Judgment (Doc. 79) is denied in part and
   granted in part.

   a. The Court rejects Judge Blewitt's Report and Recommendation and
      denies Defendants Marrow and Nichols summary judgment on
      Plaintiff's First Amendment retaliation claim and § 1983 conspiracy
      claim because there are too many unresolved issues of material fact
      over whether there was probable cause for either Defendant to charge
      Plaintiff with disorderly conduct or open lewdness.

      i. Accordingly, the Court also rejects the recommendation to
         dismiss the punitive damages claim.

   b. The Court adopts Judge Blewitt's Report and Recommendation and
      grants Defendant Marrow summary judgment on Plaintiff's Fourth
      Amendment malicious prosecution/false arrest claim and Fifth
      Amendment double jeopardy claim

      i. The Court also dismisses Counts I and II brought against
         Defendants in their official capacities.

5. Within **TWENTY-ONE (21) DAYS** of the date of this Order, Plaintiff is directed
   to show cause why the Court should not grant summary judgment in favor of
   Defendant Rogers on Counts V, VI (malicious prosecution) in light of the

Court's determination that Plaintiff was not seized for the purposes of his

Fourth Amendment claim.

Robert D. Mariani
United States District Judge